UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARTIN BANK, Individually and on Behalf of
All Others Similarly Situated,

*Plaintiff*,

-against-

LAPTOP & DESKTOP REPAIR LLC,

*Defendant*.

## CLASS-ACTION COMPLAINT

## INTRODUCTION

1. This action arises out of a fraudulent and deceptive scheme by Laptop and Desktop Repair LLC ("LDR").

2. LDR operates various web sites though which it offers to purchase people's used electronic products.

3. After LDR receives a product from a potential seller, LDR may, pursuant to LDR's terms and conditions, pay an originally quoted amount that LDR had given to the potential seller when the potential seller provided a description of the product prior to sending it to LDR. Alternatively, LDR may, pursuant to LDR's terms and conditions, make an offer that is lower than the originally quoted amount, in which case the potential seller has the right to: (a) accept the offer either affirmatively or by not responding to it for three days; or, (b) reject the offer within three days, in which case LDR must return the product to the potential seller.

4. With respect to thousands of potential sellers, LDR, more than three days after receiving a potential seller's product, sends an e-mail to the potential seller stating that LDR has written a check to the potential seller and will be sending it forthwith.

1

5.     Because LDR may send a check without giving the potential seller the right of rejection only when the check is for the originally quoted amount, and because LDR had not made a lower offer, the only permissible amount of the check is for the originally quoted amount.

6.     In violation of LDR's terms and conditions, the check, rather than being for the originally quoted amount, is for a fraction of that amount.

7.     With respect to the amount of the check, LDR claims that: prior to having sent the e-mail to the potential seller in which LDR stated that it would be sending the check, LDR had sent an e-mail, to the potential seller, in which LDR had offered the amount of the check; and that the potential seller had accepted the offer by not having responded to it within three days.

8.     In fact, LDR had not e-mailed, to the potential seller, an offer for the amount of the check, and LDR knew that it had not done so.

9.     When a potential seller objects to LDR's offer or check, and demands the return of the product, LDR states, without regard to the truth, that the potential seller's product is no longer in LDR's possession and therefore cannot be returned.

10.     With respect to thousands of potential sellers who have received an offer that is lower than the originally quoted amount and who have, in accordance with LDR's terms and conditions, e-mailed a rejection of that offer, LDR, in breach of LDR's terms and conditions, instructs such potential sellers to make a telephone call to LDR in order to reject the offer.

11.     When a potential seller calls LDR in response to the instruction described in the preceding paragraph, LRS's telephone lines are either busy or the hold times are exorbitant.

12.     When an LDR employee is connected to a potential seller who makes the telephone call to LDR as described in paragraph "10," the employee tells the potential seller that the potential seller must to speak to "purchasing," upon which LDR transfers the call and either ultimately

disconnects the call or has an employee tell the potential seller, without regard to the truth, that the potential seller's product is no longer in LDR's possession and therefore cannot be returned.

## JURISDICTION AND VENUE

13.   This Court has jurisdiction under 28 U.S.C. § 1332(d)(2)(A).

14.   The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

15.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

16.   At least two thirds of the class members are citizens of states other than New York.

## PARTIES

17.   Plaintiff, Martin Bank ("Bank"), is, and has been at all relevant times, a resident of the Eastern District of New York.

18.   LDR is, and has been at all relevant times, a limited-liability company organized and existing under the laws of Nevada, and maintains its principal place of business at 84 Coney Island Drive, Sparks, Nevada  89431.

## FACTS

**A.   Defendant's Scheme**

19.   LDR operates various web sites through which it offers to pay for people's used electronic products (the "LDR Web Sites").

20.   The LDR Web Sites (each of which begins with "www" and is followed by ".com") include cashforapples, cashforberrys, cashforipads, cashforiphones, cashforlaptops, and ecyclebest.

21.   According to the terms and conditions on the LDR Web Sites ("LDR's Terms and Conditions"):

a. A person (the "Potential Seller") initially provides the following information to

LDR: the identification of the product that the Potential Seller wishes to sell (the "Product") and the condition of the Product (the "Product Information");

b. Following the Potential Seller's entry of the Product Information, LDR produces an initial quote (the "Initial Quote"), which is preceded by "Depending on its condition, we can pay you as much as" or materially similar language;

c. If, upon inspecting the Product, LDR decides to purchase the Product for the Initial Quote, LDR will immediately send an e-mail to that effect;

d. If, upon inspecting the Product, LDR decides to make an offer to purchase the Product for an amount that is lower than the Initial Quote (the "Lower Amount"), LDR will immediately send an e-mail in which it offers the Lower Amount (the "Lower-Amount E-Mail Offer"); and

e. Upon LDR's sending of the Lower-Amount E-Mail Offer, the Potential Seller has three options: (i) affirmatively accept the Lower Amount by e-mail; (ii) affirmatively reject the Lower Amount by e-mail, upon which LDR must return the Product to the Potential Seller; or (iii) neither accept or reject the Lower Amount for three days after the Lower-Amount E-Mail Offer is sent, in which event the Lower Amount is deemed accepted.

22.     By sending a Product to LDR, a Potential Seller agrees to be bound by LDR's Terms and Conditions; and, therefore, a contract, in the form of LDR's Terms and Conditions, is formed between LDR and the Potential Seller.

23.     Before LDR receives a Product, LDR sends at least two e-mails to the Potential Seller.

24.      Before receiving a Product, LDR sends, in addition to the e-mails to which the

preceding paragraph refers, an e-mail to the Potential Seller that states, in relevant part: "Within the next 5-6 business days expect a payment confirmation email" or materially similar language (the "Confirmation-of-Receipt E-Mail").

25.    With respect to thousands of Potential Sellers, LDR, more than three days after sending the Confirmation-of-Receipt E-Mail, sends an e-mail to a Potential Seller that states, "Your check has been printed and will be on its way to you in no time!" or contains materially similar language (the "Check E-Mail").

26.    The Check E-Mail does not inform the Potential Seller of the amount of the check.

27.    A Potential Seller learns that the check is for the payment of a Lower Amount (the "Lower-Amount Payment Check") upon the earlier of the following events: logging on to the Potential Seller's account on the LDR Web Site or receiving the Lower-Amount Payment Check.

28.    When a Potential Seller informs LDR that he had never received a Lower-Amount E-Mail Offer, LDR sends him an e-mail that purports to contain a copy of the Lower-Amount E-Mail Offer (the "Purported Copy").

29.    The Purported Copy is not in the form of a forwarded e-mail but merely purports to contain the information that was in a Lower-Amount E-Mail Offer.

30.    LDR claims that the Purported Copy had been sent more than three days before the Potential Seller attempted to reject the purported Lower-Amount E-Mail Offer, as a result of which that attempt is too late under LDR's Terms and Conditions.

31.    No Lower-Amount E-Mail Offer had been sent to the Potential Seller.

32.    The Lower Amount is a fraction of the Initial Quote.

33.    Potential Sellers who do not wish to accept the Lower Amount and thus request LDR to return their Products to them are told, without regard to the truth, that the Product is no longer in

LDR's possession and therefore cannot be returned.

34.    With respect to thousands of Potential Sellers to whom LDR has sent a Lower-Amount E-Mail Offer and who have, in accordance with LDR's Terms and Conditions, e-mailed a rejection of that offer, LDR, in breach of LDR's Terms and Conditions, instructs such potential sellers to call LDR.

35.    When a Potential Seller calls LDR in response to the instruction described in the preceding paragraph, LRS's telephone lines are either busy or the hold times are exorbitant.

36.    When an LDR employee is connected to a Potential Seller who makes the telephone call to LDR as described in paragraph "34," the employee tells the Potential Seller that the Potential Seller must to speak to "purchasing," upon which LDR transfers the call and either ultimately disconnects the call or has an employee tell the Potential Seller, without regard to the truth, that the Product is no longer in LDR's possession and therefore cannot be returned.

37.    Regardless of whether LDR inspects a Product, and regardless of the results of any such inspection, LDR, at all relevant times, intends not to pay more than a fraction of the Initial Quote for the Product.

38.    LDR knowingly, and with the intent to defraud and deceive Potential Sellers, carries out the above-described practices for the purpose of forcefully acquiring Products for a fraction of the amount of the Initial Quote.

39.    Prior to the creation of a contract between LDR and a Potential Seller, LDR has the intention of breaching that contract by engaging in the above-described practices.

40.    LDR breaches its contracts with Potential Sellers by engaging in the above-described practices.

41.    Once a contract between LDR and a Potential Seller has been created, LDR acts in

bad faith by engaging in the above-described practices.

**B.    Plaintiff's Experience With Defendant**

42.     On October 5, 2014, Bank entered, on cashforiphones, the Product Information with respect to three Products ("Bank's Products").

43.     Instantly following the entry of the information as described in the preceding paragraph, two of Bank's Products were given an Initial Quote of $307, and the other Product was given an Initial Quote of $230.

44.     On October 5, 2014, Bank received an e-mail from LDR whose subject line was "Here is your Pre-Paid Label, Ship your Apple today!," and whose body stated, in relevant part, that "You can follow [a] link [provided in this e-mail] and re-print your prepaid shipping label."

45.     On October 5, 2014, Bank received, several minutes after having received the e-mail described in the preceding paragraph, three identical e-mails from LDR whose subject line was "Reset Password Request," and whose body stated, in relevant part, "You requested a link to reset your password. Please set a new password by clicking the link provided below."

46.     On October 7, 2014, Bank received, with respect to each of Bank's Products, an e-mail from LDR whose subject line was "Order [xxxxx6,or xxxxx7, or xxxxx8] Status: Thank You For Shipping Your Apple iPhone 5 16GB Verizon," and whose body stated, in relevant part, "Your package should arrive at our processing center within the next 5-7 business days. The USPS tracking number for your device is . . . . You will also receive a notification email once we have received your package."

47.     On or about October 8, 2014, Bank, using the prepaid shipping label to which paragraph "44" refers, sent Bank's Products to LDR.

48.     On October 16, 2014, Bank received, with respect to each of Bank's Products, an e-

mail from LDR whose subject line was "Order [xxxxx6 or xxxxx7] Status: Your Device Has Been Received," and whose body stated, in relevant part:

> Dear Friend Martin,
>
> **What is Happening?**
>
> We have received your package!
>
> Your device will be inspected by one of our expert technicians to determine its final value. Within the next 5-6 business days expect a payment confirmation email
>
> **What do you need to do?**
>
> Check your email SPAM folder to make sure that all of our previous emails got delivered to your INBOX. Wait for the confirmation email and a payment.
>
> Things to keep in mind:
>
> We process all devices as quickly as we can. We will contact you as soon as inspection is complete.
>
> **We sincerely appreciate your business and look forward to sending you cash!**
>
> Thanks,
>
> **Brian**
>
> Customer Satisfaction Champion

49.     On October 19, 2014, Bank received an e-mail from LDR whose subject line was "Order [xxxxx8] Status: Your Device Has Been Received," and whose body, in relevant part, was the same as that described in the preceding paragraph.

50.     On October 24, 2014, Bank received an e-mail from LDR whose subject line was "Martin - Payment Check Mailed," and whose body stated, in relevant part:

> Dear Martin,

Thank you for recycling your Apple iPhone 5 16GB Verizon!

**What is happening?**

Your check has been printed and will be on its way to you in no time! Expect it to arrive in 2-5 business days. (Dear East Coast customers - please allow a few extra days!)

**What do you need to do?**

ENJOY your CASH and FEEL GOOD for responsibly recycling your electronics. Tell everyone to visit http://www.cashforiphones.com/ to recycle their electronics too!

51.     On October 24, 2014, Bank received, several minutes after having received the e-mail described in the preceding paragraph, two identical e-mails from LDR whose subject line was "Reset Password Request" and whose body stated, in relevant part: "You requested a link to reset your password. Please set a new password by clicking the link provided below."

52.     On October 24, 2014, Bank logged onto his LDR account and learned that the LDR Checks were in the amounts of $23, 45, and $47.

53.     On October 24, 2014, Bank, after learning the amounts of the LDR Checks, called LDR's customer-service telephone number and was told by LDR's customer-service personnel that LDR had sent him three Lower-Amount E-Mail Offers, that is, one for each of Bank's Products, and that LDR deemed Bank to have accepted each offer by not responding to it within three days.

54.     No Lower-Amount E-Mail Offer had been sent to Bank.

55.     On October 24, 2014, Bank, after his conversation with LDR's customer-service personnel, received three identical e-mails from LDR whose subject line was "Copy of payment email."

56.     The relevant part of the body of the first of the three e-mails to which the preceding paragraph refers was as follows:

**Name:** Martin Bank
**User ID:** [xxxxxx]
**Date:** October 19, 2014 4:33 pm
**Subject:** Order [xxxxx6], Your Device Has Been Inspected
**Type:** Outgoing

Hi Martin,

**Good news:** your device arrived safely at our facility and just received a professional appraisal by our qualified device inspectors.

Nothing to do now but receive your cash!
After carefully inspecting your device by hand, seeing its condition, and following up-to-the-minute market conditions—you're owed $23 for the device.

This is the same amount we'd pay everyone else *for the same device right now*, and it follows the Terms & Conditions we agreed upon when you sent your device.

***What's Next?***

No more waiting around; our accounting team is processing your cash right now, and within 3 business days we'll be mailing you your check.

Thanks for trusting us as your unwanted device recycler, and improving our environment while you're at it. Have an amazing day and look out for your check in the mail!

In Your Service,

Peter Thompson

Customer Satisfaction Champion

57.     The relevant part of the body of the second e-mail to which paragraph "55" refers was

as follows:

**Name:** Martin Bank
**User ID:** [xxxxxx]
**Date:** October 19, 2014 4:33 pm
**Subject:** Order [xxxxx7], Your Device Has Been Inspected
**Type:** Outgoing

Hi Martin,

**Good news:** your device arrived safely at our facility and just received a professional appraisal by our qualified device inspectors.

Nothing to do now but receive your cash!
After carefully inspecting your device by hand, seeing its condition, and following up-to-the-minute market conditions—you're owed $47 for the device.

This is the same amount we'd pay everyone else *for the same device right now*, and it follows the Terms & Conditions we agreed upon when you sent your device.

***What's Next?***

No more waiting around; our accounting team is processing your cash right now, and within 3 business days we'll be mailing you your check.

Thanks for trusting us as your unwanted device recycler, and improving our environment while you're at it.Have an amazing day and look out for your check in the mail!

In Your Service,

Peter Thompson

Customer Satisfaction Champion

58.   The relevant part of the body of the third e-mail to which paragraph "55" refers was

as follows:

**Name:** Martin Bank
**User ID:** [xxxxxx]
**Date:** October 19, 2014 4:33 pm
**Subject:** Order [xxxxx8], Your Device Has Been Inspected
**Type:** Outgoing

Hi Martin,

**Good news:** your device arrived safely at our facility and just received a professional appraisal by our qualified device inspectors.

11

Nothing to do now but receive your cash!
After carefully inspecting your device by hand, seeing its condition, and following up-to-the-minute market conditions—you're owed $45 for the device.

This is the same amount we'd pay everyone else *for the same device right now*, and it follows the Terms & Conditions we agreed upon when you sent your device.

***What's Next?***

No more waiting around; our accounting team is processing your cash right now, and within 3 business days we'll be mailing you your check.

Thanks for trusting us as your unwanted device recycler, and improving our environment while you're at it.Have an amazing day and look out for your check in the mail!

In Your Service,

Peter Thompson

Customer Satisfaction Champion

59.     On October 31, 2014, LDR, in response to a complaint that Bank filed with the Better Business Bureau, called Bank and told him that LDR would send him an additional check so that the total amount of payment to Bank would be equal to the total amount of the Initial Quotes that had been given to him.

60.     On or about November 5, 2014, Bank received a Lower-Amount Payment Check for $115, and on or about November 12, 2014, Bank received the check to which the preceding paragraph refers.

## <u>AS AND FOR A FIRST CAUSE OF ACTION</u>

### [Fraud]

61.     Bank incorporates herein each and every allegation contained in paragraphs "1"

through "60."

62.    LDR has engaged in fraud upon Bank and the other Members of the Class, thereby wrongfully depriving them of their property.

63.    As a result of LDR's fraud, Bank and the other Members of the Class are entitled to compensatory damages, punitive damages, and other appropriate relief under the laws of each of the fifty States and the District of Columbia.

## AS AND FOR A SECOND CAUSE OF ACTION

### [Breach of Contract]

64.    Bank incorporates herein each and every allegation contained in paragraphs "1" through "60."

65.    LDR has breached its contracts with Bank and the other Members of the Class, thereby wrongfully depriving them of their property.

66.    As a result of LDR's breaches, Bank and the other Members of the Class are entitled to compensatory damages and other appropriate relief under the laws of each of the fifty States and the District of Columbia.

## AS AND FOR A THIRD CAUSE OF ACTION

### [Breach of the Implied Covenant of Good Faith and Fair Dealing]

67.    Bank incorporates herein each and every allegation contained in paragraphs "1" through "60."

68.    LDR has breached the implied covenant of good faith and fair dealing in engaging in a contractual relationship with Bank and the other Members of the Class, thereby wrongfully depriving them of their property.

69.    As a result of LDR's breaches, Bank and the other Members of the Class are entitled

to compensatory damages, punitive damages, and other appropriate relief under the laws of each of the fifty States and the District of Columbia.

## AS AND FOR A FOURTH CAUSE OF ACTION

### [Consumer-Protection Laws]

70.     Bank incorporates herein each and every allegation contained in paragraphs "1" through "60."

71.      LDR is liable to the Class Members under the following laws of the respectively listed states and the District of Columbia:

### Alabama
### Deceptive Trade Practices Act, Ala. Code §§ 8-19-1 - 8-19-15

72.     LDR has violated Ala. Code § 8-19-5(27), entitling class members to $100 per violation under Ala. Code § 8-19-10(a)(1).

### Alaska
### Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. §§ 45.50.471 - 45.50.561

73.     LDR has violated Alaska Stat. §§ 45.50.471(a), (b)(11), and (b)(12), entitling class members to $500 per violation under Alaska Stat. § 45.50.531(a).

### Arizona
### Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521 - 44-1534

74.     LDR has violated Ariz. Rev. Stat. § 44-1522(A), entitling class members to actual damages under *Freeway Mobile Homes Sales, Inc.*, 521 P.2d 1119 (Ariz. 1974).

### Arkansas
### Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101 - 4-88-503

75.     LDR has violated Ark. Code Ann. § 4-88-107(a), entitling class members to actual damages under Ark. Code Ann. § 4-88-113(f).

**California**
**Unfair-competition law, Calif. Bus. & Prof. Code, §§ 17200-17210, and**
**false-advertising law, Calif. Bus. & Prof. Code §§ 17500-17509**

76.     LDR has violated Calif. Bus. & Prof. Code § 17500, entitling class members to

restitution and injunctive relief under Calif. Bus. & Prof. Code § 17203.

**Colorado**
**Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101 - 6-1-115**

77.     LDR has violated Colo. Rev. Stat. § 6-1-105(1)(e), entitling class members to the

greater of actual damages, $500 per violation, or three times the amount of actual damages if it is

established by clear and convincing evidence that LDR engaged in bad-faith conduct, under Colo.

Rev. Stat. § 6-1-113(2)(a).

**Connecticut**
**Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a - 42-110q**

78.     LDR has violated Conn. Gen. Stat. § 42-110b(a), entitling class members to actual

damages, punitive damages in the discretion of the Court, and, as the Court deems necessary or

proper, equitable relief, under Conn. Gen. Stat. § 42-110g(a).

**Delaware**
**Consumer Fraud Act, 6 Del. C. §§ 2511-2527**

79.     LDR has violated 6 Del. C. § 2513(a), entitling class members to actual damages

under 6 Del. C. § 2525(a).

**District of Columbia**
**Consumer Protection Procedures Act, D.C. Code §§ 28-3901 - 28-3913**

80.     LDR has violated D.C. Code § 28-3904(e), entitling class members, who comprise

persons who are consumers within the meaning of D.C. Code §§ 28-3901(a)(1) and (2), to $1,500

per violation under D.C. Code § 28-3905(k)(1)(A), punitive damages under D.C. Code § 28-

3905(k)(1)(C), and injunctive relief under D.C. Code § 28-3905(k)(1)(D).

**Florida**
**Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 - 501.213**

81.     LDR has violated Fla. Stat. § 501.204(1), entitling class members to actual damages under Fla. Stat. § 501.211(2).

**Georgia**
**Fair Business Practices Act of 1975, Ga. Code Ann. §§ 10-1-390 - 10-1-407**

82.     LDR has violated Ga. Code Ann. § 10-1-393(a), entitling class members, who comprise natural persons who made their purchases primarily for personal, family, or household purposes as provided by Ga. Code Ann. §§ 10-1-392(a)(6) and (10), to general damages, exemplary damages if the violations were committed intentionally, and equitable injunctive relief under Ga. Code Ann. § 10-1-399(a), and three times actual damages Ga. Code Ann. § 10-1-399(c).

**Hawaii**
**Haw. Rev. Stat. §§ 480-2**

83.     LDR has violated Haw. Rev. Stat. § 480-2(a), entitling class members, who comprise natural persons who made their purchases primarily for personal, family, or household purposes as provided by Haw. Rev. Stat. § 480-1, $1,000 per violation under Haw. Rev. Stat. § 480-13(b)(1) and injunctive relief under Haw. Rev. Stat. § 480-13(b)(2).

**Illinois**
**Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 - 815 ILCS 505/12**

84.     LDR has violated 815 ILCS 505/2, entitling class members to actual economic damages or any other relief that the Court deems proper under 815 ILCS 505/10a(a).

**Kansas**
**Consumer Protection Act, Kan. Stat. Ann. §§ 50-617 - 50-6,115**

85.     LDR has violated 50-626(b), entitling class members, who comprise individuals, married couples, sole proprietors, or family partnerships who made their purchases for personal, family, household, business, or agricultural purposes as provided by Kan. Stat. Ann. § 50-624(b),

$10,000 per violation under Kan. Stat. Ann. §§ 50-634(b) and 50-636(a) and injunctive relief under Kan. Stat. Ann. § 50-634(c).

**Kentucky**
**Consumer Protection Act, Ky. Rev. Stat. §§ 367.110 - 367.300**

86.     LDR has violated Ky. Rev. Stat. § 367.170(1), entitling class members, who comprise persons and entities that made their purchases primarily for personal, family, or household purposes as provided by Ky. Rev. Stat. § 367.220(1), to actual damages in the discretion of the Court, and equitable relief as the Court deems necessary or proper, in the discretion of the Court under Ky. Rev. Stat. § 367.220(1).

**Louisiana**
**Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. §§ 51:1401 - 51:1418**

87.     LDR has violated La. Rev. Stat. § 51:1405(A), entitling class members to actual damages under La. Rev. Stat. § 51:1409(A).

**Maine**
**Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. Ann. §§ 205-A - 214**

88.     LDR has violated 5 Me. Rev. Stat. Ann. § 207, entitling class members, who comprise persons and entities that made their purchases primarily for personal, family, or household purposes as provided by 5 Me. Rev. Stat. Ann. § 213(1), to actual damages, restitution, and such other equitable relief, including an injunction, as the Court determines to be necessary and proper under 5 Me. Rev. Stat. Ann. § 213(1).

**Maryland**
**Consumer Protection Act, Md. Code Ann. §§ 13-101 to 13-501**

89.     LDR has violated Md. Code Ann. §§ 13-301(1) and 13-301(9)(i), entitling class members, who comprise persons and entities that made their purchases primarily for personal, household, family, or agricultural purposes as provided by Md. Code Ann. §§ 13-101(c)(1) and 13-

101(d), to actual damages under Md. Code Ann. § 13-408(a).

## Massachusetts
### Regulation of Business Practices for Consumers Protection, Mass. Gen. Laws ch. 93A

90.     LDR has violated Mass. Gen. Laws ch. 93A, § 2(a), entitling class members to $25 per violation, and between $50 and $75 per violation if such violations were committed willfully or knowingly under Mass. Gen. Laws ch. 93A, §§ 9(1) and 9(3), and such equitable relief, including an injunction, as the Court deems to be necessary and proper under Mass. Gen. Laws ch. 93A, § 9(1).

## Michigan
### Michigan Consumer Protection Act, Mich Comp. Laws §§ 445.901 - 445.922

91.     LDR has violated Mich Comp. Laws § 445.903(bb), entitling class members, who comprise persons and entities that made their purchases primarily for personal, family, or household purposes as provided by Mich Comp. Laws § 445.902(d), to $250 per violation under Mich Comp. Laws § 445.911 and injunctive relief under Mich Comp. Laws § 445.911(1)(b).

## Minnesota
### Minnesota Unlawful Trade Practices Act, Minn. Stat. §§ 325D.09 - 325D.16

92.     LDR has violated Minn. Stat. §§ 325D.44(13), entitling class members to actual damages and other equitable relief as determined by the Court under Minn. Stat. § 8.31(3a).

## Mississippi
### Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1 - 75-24-27

93.     LDR has violated Miss. Code Ann. § 75-24-5(1), entitling class members, who comprise persons and entities that made their purchases primarily for personal, family, or household purposes as provided by Miss. Code Ann. § 75-24-15(1), to actual damages under Miss. Code Ann. § 75-24-15(1).

## Missouri
### Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010 - 407.1500

94.     LDR has violated Mo. Rev. Stat. § 407.020(1), entitling class members to actual

damages, punitive damages in the discretion of the Court, and such equitable relief as the Court

deems necessary or proper under Mo. Rev. Stat. § 407.025(1).

### Montana
### Montana Unfair Trade Practices and Consumer Protection Act
### of 1973, Mont. Code Ann. §§ 30-14-101 - 30-14-143

95.     LDR has violated Mont. Code Ann. § 30-14-103, entitling class members, who

comprise persons and entities that made their purchases primarily for personal, family, or household

purposes as provided by Mont. Code Ann. § 30-14-102(1), to $500 per violation and any other

equitable relief that the Court considers necessary or proper under Mont. Code Ann. § 30-14-133(1).

### Nebraska
### Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601 - 59-1622

96.     LDR has violated Neb. Rev. Stat. § 59-1602, entitling class members to actual

damages; additional damages, in the discretion of the Court up to $1,000, of an amount that bears a

reasonable relation to the actual damages that have been sustained and which are not susceptible to

measurement by ordinary pecuniary standards; injunctive relief, under Neb. Rev. Stat. § 59-1609.

### Nevada
### Deceptive Trade Practices Act, Nev. Rev. Stat. §§ 598.0903 - 598.0999

97.     LDR has violated Nev. Rev. Stat. § 598.0915(15),  entitling class members to actual

damages under Nev. Rev. Stat. §§ 41.600(1), (2)(e), and (3)(a).

### New Hampshire
### Regulation of Business Practices for Consumer Protection law,
### N.H. Rev. Stat. Ann. §§ 358-A:1 - 358-A:13

98.     LDR has violated N.H. Rev. Stat. Ann. § 358-A:2, entitling class members to $1,000

per violation, an additional amount between $1,000 and $2,000 if the violations were committed

willfully or knowingly, and equitable relief, including an injunction, as the Court deems necessary

and proper, under N.H. Rev. Stat. Ann. § 358-A:10(I).

## New Jersey
### Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 - 56:8-195

99.     LDR has violated N.J. Stat. Ann. § 56:8-2, entitling class members to refunds under N.J. Stat. Ann. §§ 56:8-2.11 and 56:8-2.12, and three times actual damages and any other appropriate legal or equitable relief under N.J. Stat. Ann. § 56:8-19.

## New Mexico
### Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-1 - 57-12-26

100.    LDR has violated N.M. Stat. Ann. § 57-12-3, entitling class members to $100 per violation and an additional amount of up to $200 in the discretion of the Court if the Court finds that the violations were committed willfully, and injunctive relief under the principles of equity and on terms that the Court considers reasonable, under N.M. Stat. Ann. § 57-12-10(A).

## New York
### Consumer Protection from Deceptive Acts and Practices law,
### N.Y. Gen. Bus. Law §§ 349 - 350-f-1

101.    LDR has violated N.Y. Gen. Bus. Law § 349, entitling class members to $50 per violation and injunctive relief under N.Y. Gen. Bus. Law § 349(h).

## North Carolina
### Monopolies, Trusts, and Consumer Protection Law, N.C. Gen. Stat. §§ 75-1 - 75-135

102.    LDR has violated N.C. Gen. Stat. § 75-1.1(a), entitling class members to three times their actual damages under N.C. Gen. Stat. § 75-16.

## North Dakota
### Unlawful Sales or Advertising Practices law, N.D. Cent. Code §§ 51-15-01 - 51-15-11

103.    LDR has violated N.D. Cent. Code § 51-15-02, entitling class members to actual damages, and an additional amount of up to twice that amount if the violations were committed knowingly, under N.D. Cent. Code § 51-15-09.

## Ohio
### Ohio Consumer Sales Practices Act, Ohio Rev. Code §§ 1345.01 - 1345.99

104.    LDR has violated Ohio Rev. Code § 1345.02(A), entitling class members, who comprise persons and entities that made their purchases primarily for personal, family, or household purposes as provided by Ohio Rev. Code § 1345.01(A), to actual damages, plus an amount not exceeding five thousand dollars in non-economic damages, per violation under Ohio Rev. Code § 1345.09(A), and injunctive relief under Ohio Rev. Code § 1345.09(D).

## Oklahoma
### Oklahoma Consumer Protection Act, Okla. Stat. §§ 15-751 - 15-764.1

105.    LDR has violated Okla. Stat. § 15-753(20), entitling class members to actual damages under Okla. Stat. § 15-761.1.

## Rhode Island
### Deceptive Trade Practices Act, R.I. Gen. Laws §§ 6-13.1-1 - 6-13.1-28

106.    LDR has violated R.I. Gen. Laws § 6-13.1-1(7)(xii)-(xiv), entitling class members to $200, and punitive damages and equitable relief in the discretion of the Court, under R.I. Gen. Laws § 6-13.1-5.2(a).

## South Carolina
### South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10 - 39-5-170

107.    LDR has violated S.C. Code Ann. § 39-5-20(a), entitling class members to actual damages and, if violations were committed willfully or knowingly, an additional two times the amount of the actual damages and such other relief as the Court deems necessary or proper under S.C. Code Ann. § 39-5-140(a).

## South Dakota
### Deceptive Trade Practices and Consumer Protection Act,
### S.D. Codified Laws §§ 37-24-1 - 37-24-48

108.    LDR has violated S.D. Codified Laws § 37-24-6(1), entitling class members to actual

damages under S.D. Codified Laws § 37-24-31.

### Tennessee
**Tennessee Consumer Protection Act of 1977, Tenn. Code Ann. §§ 47-18-101 - 47-18-130**

109.     LDR has violated 47-18-104(a), entitling class members to actual damages under 47-18-109(a)(1) and an additional two times that amount in the discretion of the Court if the violations were committed willfully or knowingly.

### Utah
**Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1 to 13-11-23**

110.     LDR has violated Utah Code Ann. § 13-11-4(1), entitling class members, who comprise persons and entities that made their purchases primarily for personal, family, or household purposes, as provided by Utah Code Ann. § 13-11-3(2)(a)(i), to $2,000 under Utah Code Ann. § 13-11-19(2), and injunctive relief under Utah Code Ann. § Utah Code Ann. § 13-11-19(1)(b).

### Vermont
**Consumer Fraud Act, 9 Vt. Stat. Ann. §§ 2451-2480g**

111.     LDR has violated 9 Vt. Stat. Ann. § 2453(a), entitling class members, who comprise persons and entities that made their purchases for personal or household use, or business use but not for resale, as provided by 9 Vt. Stat. Ann. § 2451a(a), to the value of the consideration given by the purchaser, exemplary damages not exceeding three times the value of such consideration, and appropriate equitable relief under 9 Vt. Stat. Ann. § 2461(b).

### Virginia
**Virginia Consumer Protection Act of 1977, Va. Code §§ 59.1-196 - 59.1-207**

112.     LDR has violated Va. Code § 59.1-200(14), entitling class members, who comprise persons and entities that made their purchases for primarily for personal, family, or household purposes, as provided by Va. Code § 59.1-198, to $500, and an additional $500 if the trier of fact finds that the violations were committed willfully, under 59.1-204(A).

**Washington**
**Unfair Business Practices - Consumer Protection Act,**
**Rev. Code Wash. §§ 19.86.010 - 19.86.920**

113.    LDR has violated Rev. Code Wash. § 19.86.020, entitling class members to actual damages, an additional two times that amount in the discretion of the Court, and injunctive relief discretion under Rev. Code Wash. § 19.86.090.

**West Virginia**
**West Virginia Consumer Credit and Protection Act,**
**W. Va. Code §§ 46A-6-101 - 46A-6-110**

114.    LDR has violated W. Va. Code §§ 46A-6-102(7)(M) and 46A-6-104, entitling class members to $200, and, in the discretion of the Court, such equitable relief as the Court deems necessary or proper under W. Va. Code § 46A-6-106(a).

**Wisconsin**
**Marketing and Trade Practices law, Wisc. Stat. §§ 100.01 - 100.60**

115.    LDR has violated Wisc. Stat. § 100.18(1), entitling class members recover their pecuniary losses under Wisc. Stat. § 100.18(11)(b)(2).

**Wyoming**
**Wyoming Consumer Protection Act, Wyo. Stat. §§ 40-12-101 to 40-12-114**

116.    LDR has violated Wyo. Stat. § 40-12-105(a)(xv), entitling class members, who comprise persons who made their purchases primarily for personal, family, or household purposes as provided by Wyo. Stat. § 40-12-102(a)(ii), to actual damages under Wyo. Stat. § 40-12-108(a).

## CLASS ALLEGATIONS

117.    Bank's class claims are brought pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure.

118.    The Class comprises all Potential Sellers to whom LDR, in carrying out the practices set forth in paragraphs "1" through "60," refused to pay the amount of the Initial Quote for their Product or refused to return their Product.

119.    The Class Members are so numerous that joinder of all of them is impracticable.

120.    There are, upon information and belief, at least 50,000 Class Members whose claims are similar to Bank's claims; and, furthermore, Bank's claims are typical of the claims of the other Class Members.

121.    Bank will fairly and adequately protect the interests of the Class. Bank's interests are, for purposes of this litigation, coincident with the interests of the other Members of the Class, and Bank has no interests that are antagonistic to, or in conflict with, the other Members of the Class.

122.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because the Class is so numerous that joinder of all the Class Members is impracticable, and because the damages sustained by most of the individual Class Members are too small to render prosecution of the claims asserted herein economically feasible on an individual basis, the expense and burden of individual litigation makes it impractical for all of the Class Members to adequately address the wrongs complained of herein. Bank knows of no impediments to the effective management of this action as a class action.

123.    Common questions of law and fact predominate over questions that affect only individual Class Members. Among these questions are:

> (i) whether LDR's Terms and Conditions provide that a Potential Seller initially provides Product Information to LDR;

(ii) whether LDR's Terms and Conditions provide that, following the Potential Seller's initial entry of Product Information, LDR produces an Initial Quote;

(iii) whether LDR's Terms and Conditions provide that a Potential Seller to whom LDR has sent a Lower-Amount E-Mail Offer has three options: (a) affirmatively accept the Lower Amount by e-mail; (b) affirmatively reject the Lower Amount by e-mail, upon which LDR must return the Product to the Potential Seller; or (c) neither accept or reject the Lower Amount for three days after the Lower-Amount E-Mail Offer is sent, in which event the Lower Amount is deemed accepted;

(iv) whether LDRs' conduct constitutes fraud under the laws of each of the fifty States and the District of Columbia;

(v) whether LDR's conduct constitutes breach of contract under the laws of each of the fifty States and the District of Columbia;

(vi) whether LDR's conduct constitutes breach of the implied covenant of good faith and fair dealing contract under the laws of each of the fifty States and the District of Columbia; and

(vii) whether LDR's conduct constitutes violations of the consumer-protections statutes set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant:

(a)      Awarding, to Plaintiff and the other Members of the Class, compensatory damages, punitive damages, and other appropriate as a result of Defendant's fraud under of the laws of each of the fifty States and the District of Columbia;

(b)      Awarding, to Plaintiff and the other Members of the Class, compensatory damages and other appropriate relief as a result of Defendant's breaches of contract under of the laws of each of the fifty States and the District of Columbia;

(c)      Awarding, to Plaintiff and the other Members of the Class, compensatory damages, punitive damages, and other appropriate as a result of Defendant's breaches of the implied covenant of good faith and fair dealing in engaging in a contractual relationship under of the laws of each of the fifty States and the District of Columbia;

(d)      Awarding, to Plaintiff and the other Members of the Class, damages and any other relief authorized by the consumer-protection statutes set forth in the Fourth Cause of Action; and

(e)      Awarding, to Plaintiff and the other Members of the Class, the costs and disbursements of this action, and reasonable attorney's fees, and such other and further relief as the Court deems just and proper.

Dated:  January 6, 2015

Respectfully submitted,

TODD C. BANK, ATTORNEY AT LAW, P.C.
119-40 Union Turnpike, Fourth Floor
Kew Gardens, New York 11415
(718) 520-7125

*Counsel to Plaintiff*

   **s/ *Todd C. Bank***
TODD C. BANK